http://www.va.gov/vetapp16/Files6/1644964.txt

Citation Nr: 1644964 
Decision Date: 11/30/16 Archive Date: 12/09/16

DOCKET NO. 94-48 515 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Manila, the Republic of the Philippines

THE ISSUES

1. Entitlement to service connection for a cervical spine disability.

2. Entitlement to service connection for the residuals of a neck injury, claimed as airway obstruction, dysphonia, dysphagia, and laryngopharyngeal reflux disease. 

3. Entitlement to service connection for herpes zoster with neurologic deficits. 

REPRESENTATION

Appellant represented by: Daniel G. Krasnegor, Attorney

WITNESS AT HEARINGS ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

Harold A. Beach, Counsel

INTRODUCTION

The Veteran served on active duty from June 1976 to June 1980. 

This case comes before the Board of Veterans' Appeals (Board) on appeal from a decision of a Department of Veterans Affairs (VA) Regional Office (RO). This case was previous before the Board in October 2012, when it was remanded for further development.

In May 2000 and June 2005, the Veteran had hearings before the Board. The June 2005 hearing was held before the undersigned Veterans Law Judge. The Veterans Law Judge who held the May 2000 hearing is no longer with the Board. Transcripts of those hearings are of record.

In December 2013, the RO denied the Veteran's claim of entitlement to service connection for vasomotor rhinitis. The Veteran was notified of that decision, as well as his appellate rights; however, a notice of disagreement was not received with which to initiate an appeal. Therefore, that decision became final. 38 U.S.C.A. § 7105(c) (West 2014); 38 C.F.R. § 20.1103 (2015). 

In an October 2016 statement, the representative suggested that the Veteran was seeking entitlement to service connection for vasomotor rhinitis. That issue has not been certified to the Board on appeal, nor has it otherwise been developed for appellate purposes. Therefore, the Board has no jurisdiction over that issue and it will not be considered below. 38 U.S.C.A. § 7104(a) (West 2014); 38 C.F.R. § 20.101 (2015). It is referred to the RO for appropriate action. 

REMAND

The Veteran has been examined by the VA on multiple occasions to determine the nature and etiology of the claimed cervical spine disability, residuals of a neck injury, and herpes zoster. In December 2015 and October 2016, the Veteran's representative contended that there were multiple deficiencies which made the VA examinations inadequate for rating purposes. 

In December 2015, the Veteran's representative reported the Veteran's contention that herpes zoster was the result of exposure to depleted uranium. The Veteran asserted that the exposure took place during an incident in 1977 while he was stationed at Fort Myer, Virginia. That incident has yet to be verified. 

In support of the claim with respect to depleted uranium, the Veteran submitted a report from Basra University. That report has portions which require translation.

In October 2016, the Veteran's representative stated that the February 2013 VA examination was inadequate because the examiner did not address the in-service evidence of a boil on the Veteran's left lower extremity in service or the opinions provided by Dr. Janati. 

The representative noted that the VA examiner had summarized characteristic presentations of herpes zoster as a "cluster of grouped vesicles or blisters on an erythematous base along a single dermatome." The representative further noted that the lesions in the 1977 medical records were listed as "erythematous papules and vesicles in [the] extremities and abdomen," a "rash with vesicles on the hands" and "erythematous macular lesions... spreading with vesicles." The representative questioned how those descriptions were different. 

In May 2013, the Veteran was reexamined by the VA to determine the nature and etiology of any skin disorder found. The examiner cited the medical literature that herpes zoster often begins with a prodrome of intense pain and is associated with pruritus, tingling, tenderness or hyperesthesia, a painful eruption of grouped vesicles on an erythematous base develops within a sensory dermatome (or along the distribution of a sensory nerve), usually on the trunk. The cutaneous eruption typically involves a single dermatome and rarely crosses the midline. The representative cited the use of the words "often," "usually," and "typically" and noted those to be words of general application. The representative questioned whether the Veteran may have had less typical manifestations of herpes zoster. The representative suggested that there was no pathology to explain pain in the Veteran's left leg in service, and that pain could have been a less typical manifestation of herpes zoster. The representative cited reports from Dr. Janati such as that in 2000 suggesting that the Veteran had left leg pain that was associated with herpes zoster. Dr. Janati opined that the Veteran would continue to have relapses of herpes zoster manifested by sudden worsening of left lower extremity pain. 

The representative notes that the VA examiner reported that the Veteran had no exposure to chicken pox or shingles. However, the examiner stated that the Veteran had had no recent "known" exposure. The representative maintained that this does not rule out "unknown" exposure. 

In October 2016, the representative noted that an internet medical article from the Cleveland Clinic indicated that symptoms of laryngopharyngeal reflux disease included difficulty swallowing (dysphagia); a red, swollen, or irritated voice box (speaking difficulties or dysphonia); and a feeling of a lump in the throat or the need to clear the airway. The representative contended that those symptoms were virtually the same as the residuals experienced by the Veteran following an inservice neck injury. Therefore the representative requested that the examiner provide an opinion to address whether or not there was any relationship between the inservice symptomatology and the current symptoms of the Veteran's current laryngopharyngeal reflux disease. 

In light of the foregoing, the Veteran's representative concluded that the issue on appeal should be remanded for further development. After reviewing the record, the Board agrees. 

Accordingly, the case is REMANDED for the following action:

1. Ask the Veteran for evidence of exposure to chicken pox or shingles prior to or during service and prior to claimed manifestations of herpes zoster. 

2. Translate the non-English portions of the report from Basra University, received on December 7, 2015.

3. Ask the Veteran for the date (within two months) and circumstances of the 1977 incident during which he was, reportedly, exposed to depleted uranium. That should include, but is not limited to, the unit of assignment, where and how the exposure took place, any duties he was performing which led to the exposure, any other individuals who were present, and how he became aware that he was exposed depleted uranium. Also ask the Veteran for any other evidence of that exposure, such as medical statements or statements from any individuals who had first-hand knowledge of that exposure. 

4. Then, ask the Department of the Army to verify whether or not depleted uranium was located at Fort Myer, Virginia on the dates indicated by the Veteran, and whether it is at least as likely as not that the Veteran was exposed to depleted uranium. 

5. Then, schedule the Veteran for an examination to determine the etiology of herpes zoster. All indicated tests and studies must be performed, and any indicated consultations must be scheduled. The examiner must review the claims file and should note that review in the report. The examiner must opine whether it is at least as likely as not (50 percent or greater probability) that herpes zoster first manifested in service or is otherwise the result of any incident in service. 

In particular, the examiner must state why and how the dermatologic symptoms reported in service, "erythematous papules and vesicles in [the] extremities and abdomen" 'rash with vesicles on the hands" and "erythematous macular lesions ... spreading with vesicles" were or were not manifestations of herpes zoster. In this regard, the examiner must state whether or not the lesion, characterized as a boil, on the Veteran's left lower extremity, was associated with herpes zoster. The examiner must also state if the Veteran demonstrated less typical manifestations of herpes zoster and, if so, should describe those manifestations. The examiner must address the internet medical articles on shingles, including but not limited to, the aspect that bacterial infections can occur from open blisters. Those articles from Healthline and the Centers for Disease Control and Prevention were received on October 6, 2016. If it is determined that the Veteran was exposed to depleted uranium, the examiner must opine whether it is at least as likely as not (50 percent or greater probability) that herpes zoster is the result of exposure to depleted uranium in service. In so doing, the examiner must address the results of the study done at the College of Medicine of Basra University that was received on December 7, 2015. For all opinions, the examiner should provide a rationale explaining the basis for the opinion. 

6. Then, schedule the Veteran for a VA examination with a medical doctor who has not previously examined him. The examiner should review the medical evidence regarding laryngopharyngeal reflux disease. The examiner should discuss whether the symptoms of laryngopharyngeal reflux disease are different from those the Veteran experienced in service shortly after the neck injury, to include difficulty swallowing (dysphagia); a red, swollen, or irritated voice box (speaking difficulties or dysphonia); and a feeling of a lump in the throat or the need to clear the airway. The examiner should provide an opinion as to whether it is at least as likely as not (50 percent or greater probability) that the Veteran has any residuals of an inservice neck injury, to specifically include laryngopharyngeal reflux disease, airway obstruction, dysphonia, or dysphagia. For all opinions, the examiner should provide a rationale explaining the basis for the opinion. 

7. Then, readjudicate the claims. If any decision is adverse to the Veteran, issue a supplemental statement of the case and allow the applicable time for response. Then, return the case to the Board.

The Veteran is advised that it is his responsibility to report for all scheduled VA examinations and to cooperate in the development of the claims. The consequences for failure to report for a VA examination without good cause may include denial of the claim. 38 C.F.R. § 3.655 (2015). 

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

_________________________________________________
Harvey P. Roberts
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).